IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOHN ROBERT WILLIAMS, III,

  Plaintiff,

v.

OFFICER DOMINIQUE WYNDER,
OFFICER SHAWN FARRELL,

  Defendants.

Civil Action No.: DKC-20-905

## MEMORANDUM OPINION

In response to this civil rights complaint, Defendants Dominique Wynder and Shawn Farrell[1] filed a motion to dismiss or for summary judgment because the matters asserted were not exhausted through the administrative remedy procedures in place at the Prince George's County Detention Center. ECF No. 21. Plaintiff opposes the motion (ECF Nos. 23, 24) and Defendants filed a reply (ECF No. 27). No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2021). For the reasons stated below, Defendants' motion shall be denied.

## BACKGROUND

Plaintiff John Robert Williams was an inmate at the Prince George's County Detention Center at all times relevant to this case. He claims that on April 6, 2019, Officers Wynder and Farrell came into his cell at approximately 7:00 a.m. ECF No. 1 at 3. Mr. Williams states that one of the officers held him down on his bed and the other officer pepper sprayed him. *Id*. Officers Wynder and Farrell then proceeded to assault Mr. Williams "for about one minute" until the Emergency Response Team ("ERT") came into the cell and intervened. *Id*.

---

[1] The Clerk will be directed to amend the docket to reflect Defendants' full names.

Officers on the ERT then handcuffed Mr. Williams and took him to medical where his eyes were rinsed and he was given a change of clothes. ECF No. 1 at 3. Mr. Williams recalls that when he got to medical his lip was bleeding, his face was puffy, and he had knots on the back of his head; however, the nurse who examined him wrote that he had no injuries. *Id*. Mr. Williams recalls that later on he was taken back to medical for chest pains and his head injuries were noted by the same nurse who saw him initially. *Id*.

Mr. Williams was taken back to a different housing unit that is designated for "lock-up." ECF No. 1 at 3. He was informed he would be receiving a charge for assaulting a correctional officer and ultimately received 30 days on lock-up. *Id*. Williams claims he was denied grievance forms and adds that he has never seen an officer give an inmate a grievance form while he was at the detention center. *Id*. at 3-4.

On March 24, 2019, Mr. Williams claims that "this officer" came to his cell during count and threatened him. ECF No. 1 at 3. He recalls that the officer, whom he does not identify, asked him if he wanted to fight and Officer McLean, who is not named as a Defendant in this suit, stood behind him while shaking a can of pepper spray. *Id*. Mr. Williams claims that "this is the exact same officer that under false pretenses had [him] sent to lock-up in the first place." *Id*. It is unclear to whom Mr. Williams is referring when he states, "this officer."

Mr. Williams explains that the administration at the detention center helps officers get away with abuse and emboldens them. ECF No. 1 at 4. He claims that officers falsely wrote "refused to sign" on the infraction notice which denied him the right to call witnesses at his adjustment hearing and makes him look like an uncooperative inmate, guaranteeing a guilty finding. *Id*.

Mr. Williams claims he "begged" the "night Zone Commander/officer" to put him into a cell with a camera and she reluctantly agreed. ECF No. 1 at 4. He states that a lot of officers "prior to this were doing their best to avoid contact with [him]." *Id*.

Mr. Williams states that on May 2, 2019, two officers from Internal Affairs interviewed him while he remained housed at the detention center. ECF No. 1 at 2. He claims that they told him the investigation was ongoing and also warned him that if any of his statements regarding the assault were fabricated, he would be charged with a criminal offense. *Id*. Mr. Williams has not been charged with a crime in connection with the incident. *Id*.

On May 10, 2019, Mr. Williams was released from disciplinary segregation and placed on administrative segregation. ECF No. 1 at 3. He states that he was told he could not be put back into general population due to the ongoing investigation into his claims against Officers Wynder and Farrell. *Id*.

As relief, Mr. Williams seeks unspecified monetary damages. ECF No. 1 at 5.

Defendants do not address the merits of Mr. Williams' complaint. They simply assert that Mr. Williams failed to exhaust administrative remedies as described in the Inmate Handbook Mr. Williams received when he was committed to the detention center. ECF No. 21-1 and 21-2.

**STANDARDS OF REVIEW**

A.   Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med.*

*Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002).  Importantly, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

The court maintains an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).  "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Fed. R. Civ. P. 56(e)).  A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party.  *Anderson*, 477 U.S. at 249-50.

B.      Administrative Exhaustion

Failure to exhaust administrative remedies is an affirmative defense.  *See Jones v. Bock*, 549 U.S. 199, 215-216 (2007); *Custis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017).  If Mr. Williams has not properly presented his claim through an available administrative remedy procedure it must be dismissed pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e.  *See Ross v. Blake*, __ U.S. __, 136 S.Ct. 1850, 1857 (2016) (exhaustion is mandatory).  The PLRA provides in pertinent part that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

4

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003), *aff'd*, 98 Fed. Appx. 253 (4th Cir. 2004).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d at 725, 729; *see Langford v. Couch*, 50 F.Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he . . . PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford* 548 U.S. at 93 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original). But the court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

An inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). In *Ross*, 136 S.Ct. 1850 (2016), the Supreme Court rejected a "freewheeling approach to exhaustion as inconsistent with the PLRA." *Id*. at 1855. In particular, it rejected a "special circumstances"

5

exception to the exhaustion requirement. *Id*. at 1856-57. But it reiterated that "[a] prisoner need not exhaust remedies if they are not 'available.'" *Id*. at 1855. "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008).

An administrative remedy is available if it is "'capable of use' to obtain 'some relief for the action complained of.'" *Ross*, 136 S.Ct. at 1859 (quoting *Booth*, 532 U.S. at 738). Thus, an inmate must complete the prison's internal appeals process, if possible, before bringing suit. *See Chase*, 286 F. Supp. 2d at 529-30. As a prisoner, plaintiff is subject to the strict requirements of the exhaustion provisions. *See Porter v. Nussle*, 534 U.S. at 528 (no distinction is made with respect to exhaustion requirement between suits alleging unconstitutional conditions and suits alleging unconstitutional conduct). Exhaustion is also required even though the relief sought is not attainable through resort to the administrative remedy procedure. *See Booth*, 532 U.S. at 741.

The *Ross* Court outlined three circumstances when an administrative remedy is unavailable and an inmate's duty to exhaust available remedies "does not come into play." 136 S.Ct. at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id*. The third circumstance arises when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

# DISCUSSION

Defendants submit an affidavit from Greg Smith, Acting Deputy Director of the Bureau of Operations of the Prince George's County Department of Corrections. ECF No. 21-2 at ¶ 1. Mr. Smith reviewed the inmate grievance records and found no evidence that Mr. Williams filed any grievances between March 30, 2018 and May 28, 2019, when he was incarcerated in the Prince George's County Detention Center. *Id*. at ¶¶ 3, 8, 9.

The procedure in place for administrative exhaustion requires inmates to attempt first to resolve their complaint informally with the housing unit officer and Zone Commander. ECF No. 21-2 at ¶ 5. If no informal resolution occurs, the inmate is told by the Zone Commander to file a formal grievance by completing an Inmate Grievance Form. *Id*. According to Mr. Smith, Zone Commanders are required to file Inmate Grievance Forms in the Department's grievance records filing system. *Id*. at ¶ 6.

The procedures described in the Policy and Procedure Manual include a directive requiring an attempt at informal resolution of all complaints between inmates and staff. ECF No. 21-2 at 4. If an informal resolution cannot be reached and the inmate wishes to file a grievance, the inmate may file a written complaint. *Id*. When an inmate elects to file a written grievance, the following procedures are invoked:

   1. <u>Housing Unit Officer's Responsibility</u>:

   When an inmate requests an Inmate Grievance Form from the housing unit officer, the officer will attempt to discuss the issue with the inmate to resolve the complaint by an informal resolution. If the issue can not be resolved, the housing unit officer will contact the Zone Commander who will intercede and make another effort at resolving the grievance informally.

   2. <u>Zone Commander's Responsibilities</u>:

   The Zone Commander will attempt to resolve the grievance informally. If the Zone Commander can not reach a resolution with the inmate, the inmate will be

7

directed by the Zone Commander to complete an Inmate Grievance Form. The Zone Commander will ensure that the Inmate Grievance Form is completed in an accurate manner. The Zone Commander will then:

   a. Sign and date/time the Inmate Grievance Form and document the action taken to resolve the grievance;
   b. Give a copy (yellow) of the Inmate Grievance Form to the inmate for his records;
   c. Forward the Inmate Grievance Form (white/pink copies) to the Shift Commander's Office prior to the end of the shift;
   d. Handle all emergency grievances, <u>immediately</u>, notifying the Shift Commander concerning all such emergency grievances and the action taken as soon as time allows;
   e. Document the Inmate Grievance form in the Zone Commander's OMS to include the inmate's name, identification number, housing location and reason for the grievance.
   f. When Inmate Grievance forms are returned for lack of information, resubmit completed forms to the Shift Commander the next business day.

ECF No. 21-3 at 4 (emphasis in original). The Shift Commander is required to log the grievance in the Inmate Grievance Logbook and place the grievance log number on the grievance form. *Id*. at 5. The Shift Commander reviews the actions taken by the Zone Commander and determines if the actions taken were appropriate; if more information is needed, the matter is referred back to the Zone Commander the next business day. *Id*. If the action by the Zone Commander is accepted, the grievance is forwarded to the Division Chief if it is not resolved. *Id*. If the matter is resolved, the grievance is forwarded to the Grievance Coordinator for filing. *Id*.

All grievances are investigated by the Division Chief. ECF No. 21-4 at 5. Unresolved grievances require the Division Chief to investigate and resolve the grievance within 5 business days; make appropriate entries on the grievance tracking form; and complete a response form which must be forwarded to the inmate within 96 hours, excluding weekends and holidays. *Id*. at 5-6. The procedure also includes an appeal process. *Id*. at 6.

Defendants assert that the absence of any specific allegation by Mr. Williams that a particular staff member refused to provide him with forms or that he attempted to secure an informal resolution on a specific date with a specific staff member, is evidence that Mr. Williams simply chose to forego the entire process prior to filing this lawsuit. Mr. Williams states in his declaration that his allegation in the complaint that grievance forms are unavailable in the detention center is true. ECF No. 24. He claims that the issue regarding the lack of access to grievance forms was investigated by Internal Affairs after he was interviewed on May 2, 2019, but he does not explain what he said about it or how it was handled by the officers investigating his claim. *Id*.

The evidence before the court establishes that Mr. Williams never filed a grievance the entire time he was incarcerated at the detention center. While Defendants cite this fact as weighing in their favor, the absence of any grievances from Mr. Williams also supports his claim that grievance forms are impossible to obtain. Defendants do not provide evidence regarding the number of grievances filed by inmates confined to the detention center, making it impossible to discern if the process is in fact available to the inmate population. It is incumbent upon Defendants to demonstrate that Mr. Williams did not avail himself of an administrative remedy procedure that was available to him. *See Bock*, 549 U.S. at 216 (exhaustion is not a pleading requirement but an affirmative defense), *see also Custis*, 851 F.3d at 363 (District Court erred in sua sponte dismissal of complaint where exhaustion issue was unclear and administrative remedies may have been unavailable). Defendants have failed to demonstrate that fact, therefore their motion shall be denied.

A separate Order follows.

July 2, 2021                                                            /s/
                                                            DEBORAH K. CHASANOW
                                                            United States District Judge